UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIRLANDE DINA MICHEL-WIGGINS,<br><br>    Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*,<br><br>    Defendants. | Civil Action No. 23-3398 (JMC) |

**MEMORANDUM OPINION**

Before the Court is the U.S. Department of Housing and Urban Development (HUD) and Secretary Scott Turner's motion to dismiss Plaintiff Mirlande Dina Michel-Wiggins' complaint.[1] Michel-Wiggins is the recipient of a voucher under HUD's Housing Choice Voucher Program, which provides financial assistance to subsidize rent for individuals on the private market. Michel-Wiggins brings disability discrimination claims against the Government based on the denial of her request to apply the voucher toward the cost of her room at an extended stay hotel. She also challenges HUD's refusal to conduct an in-person interview inside of her hotel room during a HUD investigation. Because the Court lacks jurisdiction over the claims for money damages and none of the remaining claims are plausible, the motion to dismiss is granted.[2]

---

[1] Secretary Turner has been substituted for his predecessor in office. *See* Fed. R. Civ. P. 25(d).

[2] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

I.  **BACKGROUND**

   A.  **Michel-Wiggins' Housing Voucher Dispute**

Michel-Wiggins has lived in the Candlewood Suites, an extended stay hotel in Georgia, since June 2022. ECF 1 at 6. In December 2022, Michel-Wiggins submitted an application for an emergency housing voucher to the Georgia Department of Community Affairs—a local public housing agency that administers the Housing Choice Voucher Program in Michel-Wiggins' area. *Id.* That agency approved Michel-Wiggins for a housing voucher in June 2023. *Id.* Michel-Wiggins then submitted a request to the same agency to use her voucher to pay for her room at the Candlewood Suites. *Id.* She included a reasonable accommodation request form, asking the agency to allow her "to utilize her Housing Choice Voucher for housing with support services provided with her 1 [bedroom] unit at Candlewood Suites," as it would "allow continued independence and no need for a Live-in-Aide." ECF 1-2 at 3.

Michel-Wiggins' healthcare provider also completed the form, noting that Michel-Wiggins had "chronic medical conditions [that] can cause episodic systems which can interfere with mobility, self-care, cognition and communication." *Id.* at 5. Michel-Wiggins also attached notes from her healthcare provider. The notes explained that Michel-Wiggins "gets a lot of anxiety if she has to go outside of the house. . . [and] has opted for meals to be delivered to her. She doesn't feel afraid of people but says that she can't get herself to go outside." *Id.* at 7. According to the form, the healthcare provider diagnosed Michel-Wiggins with post-traumatic stress disorder and agoraphobia.[3] *Id.* at 8. The general manager at the Candlewood Suites also submitted a letter. He confirmed that the hotel would be willing to comply with the necessary requirements of the

---

[3] Agoraphobia is a type of anxiety disorder that involves fearing and avoiding places or situations that might cause panic and feelings of being trapped. The fear can sometimes be so overwhelming that individuals may experience an inability to leave their home. *Agoraphobia*, Mayo Clinic, https://perma.cc/KDX4-YHWR (last visited Sept. 23, 2025).

2

voucher program and accept a voucher as payment. *Id.* at 9. The letter also explained that Michel-Wiggins "ventures out infrequently," and "[r]esiding in a hotel allows her to do this with minimal disruption to maintaining her life, as we can provide and bring to her many of the basic necessities that she needs day to day, as well as providing regular housekeeping service." *Id.* The manager added that the Candlewood Suites has complementary "on-site laundry and workout facilities," and that someone always staffs the front desk, so if Michel-Wiggins "is in distress, she has a constant and direct line to someone to help her with what she needs." *Id.* According to her medical provider, the hotel services "alleviate" the limitations caused by Michel-Wiggins' disability as "she is currently receiving services to help with shopping, cooking, transportation, [and] mental health services." ECF 20-1 at 2.

In October 2023, Michel-Wiggins received a response from the local housing agency denying her request to use the voucher at the Candlewood Suites because a "hotel/ extended stay is not an approved housing type" under HUD regulations. ECF 1-2 at 1. The agency asked Michel-Wiggins to submit a new request for an approved housing type. *Id.* Michel-Wiggins declined to do so and has since remained in the Candlewood Suites. ECF 1 at 7.

### B.  Michel-Wiggins' HUD Investigation Interview

Separate from her request for the hotel reasonable accommodation, Michel-Wiggins also filed a complaint with HUD's Office of Fair Housing and Equal Opportunity, seemingly related to an issue she experienced while applying to the voucher program. ECF 1 at 5; ECF 1-5 at 53–54. Michel-Wiggins attached to her complaint in this case her email correspondence with HUD about that grievance.

In October 2023, a HUD investigator reached out to Michel-Wiggins to schedule an interview regarding her Fair Housing complaint. ECF 1-5 at 37. In her email, the investigator informed Michel-Wiggins that if she "would like to have an in person interview" it could be held

at the local HUD office. *Id.* Michel-Wiggins replied requesting that the in-person interview be conducted at her "residence" at the Candlewood Suites as an accommodation for her agoraphobia and mobility restrictions. *Id.* at 38. A few days later, a supervisor wrote to Michel-Wiggins regarding her request. The supervisor explained that the investigator had "presented several alternate options such as a Zoom or TEAMS live-video meeting, or meeting in a public setting like [her] hotel lobby or the public library. However, [Michel-Wiggins was] not amenable to those alternate options." *Id.* at 41. As such, she offered Michel-Wiggins an opportunity to suggest "any other option that [HUD] did not consider that [Michel-Wiggins] would be willing to accept to achieve [her] overall goals." *Id.* Michel-Wiggins declined to consider any other option and insisted on an in-person interview in her hotel room. She also noted that a "public hotel lobby would not be an appropriate space for [her] to speak and present confidential matters related to [her] HUD investigation." *Id.* at 40.

The supervisor then informed Michel-Wiggins that HUD is not able to conduct interviews in hotel rooms, but "a meeting via video conferencing would accommodate [Michel-Wiggins'] disability best since [she] will not have to venture out of [her] hotel room." *Id.* at 39. She added that "[w]hile in-person meetings can be useful for investigations, the majority of investigations are conducted virtually." *Id.* Yet again, Michel-Wiggins rejected the virtual option and insisted on an in-person interview in her hotel room. Two days later, the supervisor assured Michel-Wiggins that she was taking the request seriously but needed "to find an accommodation that is suitable for [Michel-Wiggins] within the confines of [HUD] operations." *Id.* at 42. Accordingly, the supervisor proposed that they "either conduct the meeting via video conferencing or send [Michel-Wiggins] written questions, which will not potentially exacerbate [her] health condition." *Id.* She added that doing so would be "consistent with the protocols that [HUD] use[s] in the majority of the fair

housing cases that [it] investigate[s]." *Id.* at 41–43. Once more, Michel-Wiggins rejected the proposals and demanded an in-person interview because she "prefer[s] in-person meetings versus video or chat meetings when discussing matters of a serious nature." *Id.* at 43. She also stated that this would "be [her] last conversation regarding the request for an in-person interview at [her] home." *Id.*

Given Michel-Wiggins' refusal to accept any option other than an interview in her hotel room, the HUD investigator resorted to sending Michel-Wiggins the interview questions in writing via email. *Id.* at 45–47. Rather than respond to the written questions, Michel-Wiggins replied suggesting "the option of [HUD] renting a hotel room at the same hotel" to conduct the interview. *Id.* at 48. The investigator informed Michel-Wiggins that "[t]he Department is not able to rent a hotel room for the interview, but [they] fully understand that the hotel lobby is not an acceptable location due to [Michel-Wiggins'] disability. Therefore the questions were emailed to [her]." *Id.* at 49. Michel-Wiggins concluded the thread by requesting that HUD reassign her case to a new investigator and stating that she would be filing a lawsuit against HUD. *Id.* at 49–51.

Proceeding pro se, Michel-Wiggins brought this suit to challenge HUD's failure to provide her an in-person interview in her hotel room, as well as the denial of her request to use her housing voucher at the Candlewood Suites. ECF 1. The Government moved to dismiss under 12(b)(1) and 12(b)(6), contending that the Court lacks jurisdiction over Michel-Wiggins' claims for monetary relief and that she otherwise fails to state a claim. ECF 11. Michel-Wiggins filed several documents in opposition, *see* ECF 17, 24, 25, and the pending motion is fully briefed and ripe for review.

## II. LEGAL STANDARD

When assessing a motion to dismiss under Rule 12(b)(1), the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l*

*Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Based on those facts, the Court then "determine[s] jurisdictional questions." *Id.*

To survive a Rule 12(b)(6) motion, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must "treat the complaint's factual allegations as true" and afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). That said, the Court "need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the [C]ourt accept legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). The ultimate question is whether the complaint "pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In making that determination, the Court relies on the complaint itself, which may include "documents attached as exhibits or incorporated by reference in the complaint." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011). Further, when a plaintiff proceeds pro se, the Court must construe the complaint "liberally." *Untalasco v. Lockheed Martin Corp.*, 249 F. Supp. 3d 318, 322 (D.D.C. 2017). That said, the "complaint must still present a claim on which the Court can grant relief." *Id.*

### III. ANALYSIS

Michel-Wiggins invokes Title VI of the Civil Rights Act, Titles II and III of the Americans with Disabilities Act (ADA), the Fair Housing Act (FHA), and Section 504 of the Rehabilitation Act to challenge the denial of her requests to: 1) use her housing voucher at the hotel; and 2) have an in-person interview at her home. For various reasons, none of her claims can proceed.

**A.     The Court lacks jurisdiction over Michel-Wiggins' claims for money damages.**

At the threshold, the Government argues that all of Michel-Williams' claims seeking money damages are barred by sovereign immunity. *See* ECF 11-1 at 12–13. Because the Court "must first establish" that "it has jurisdiction" before "address[ing] the merits," and because "[s]overeign immunity is jurisdictional in nature," the Court starts here. *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Meyer*, 510 U.S. at 475. The Government is right that this rule bars the claims for monetary relief here. None of the statutes that Michel-Williams invokes "unequivocally" waive the Government's immunity from money damages suits. *Lane v. Pena*, 518 U.S. 187, 192 (1996).

The Supreme Court has squarely held that Section 504 of the Rehabilitation Act does not include such a waiver. *See id.* The D.C. Circuit has held the same for Title VI, and other courts in this district have reached the same conclusion for the Fair Housing Act. *See Dorsey v. Dep't of Lab.*, 41 F.3d 1551, 1555 (D.C. Cir. 1994) (Title VI); *Boyd v. Browner*, 897 F. Supp. 590, 594–95 (D.D.C. 1995) (Fair Housing Act). And given that neither Title II nor Title III of the ADA applies to the federal government, those statutes unsurprisingly do not include a waiver of the federal government's sovereign immunity. *See Edwards v. United States*, No. 18-cv-2569, 2020 WL 2800605, at *7 (D.D.C. 2020) (K.B. Jackson, J.) ("[C]ourts have long held that none of the titles [in the ADA] is directed toward the federal government."). The APA's waiver of sovereign immunity does not give the Court jurisdiction over these claims, either. *See Bowen v. Massachusetts*, 487 U.S. 879, 892 (1988) (APA does not waive sovereign immunity where plaintiff is "seeking . . . money damages"). Because Michel-Wiggins has not identified any statute

7

that waives the federal government's sovereign immunity for her claims seeking monetary relief, the Court lacks jurisdiction over those claims.

    **B.**    **Michel-Wiggins cannot state a claim against HUD related to the use of her housing voucher at the hotel.**

The Court does have jurisdiction over Michel-Wiggins' claims for prospective relief. *See Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006) ("[T]he APA's waiver of sovereign immunity [for relief other than money damages] applies to any suit whether under the APA or not."). As the Government correctly argues, however, those claims are all subject to dismissal under Rule 12(b)(6). While they suffer several flaws, the most basic is that HUD was not responsible for the denial of Michel-Wiggins' request to use her voucher at the hotel.

The local housing agency administering the voucher program denied Michel-Wiggins' request to use the voucher at the hotel—not HUD. ECF 1-2 at 1. Failure-to-accommodate claims require the plaintiff to prove that *the defendant* denied the plaintiff's request for a reasonable accommodation. *See Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014) (elements of failure-to-accommodate Rehabilitation Act claim); *see also Simmons v. Langston Lane Ltd. P'ship*, No. 18-cv-2169, 2023 WL 2733975, at *3 (D.D.C. Mar. 31, 2023) (identifying same element of a Fair Housing Act claim and explaining the overlap between the "reasonable-accommodation test" under the ADA, Rehabilitation Act, and FHA). In other words, the "underlying assumption of any reasonable accommodation claim is that the plaintiff has requested an accommodation which the defendant has denied." *Parham v. CIH Properties, Inc.*, 148 F. Supp. 3d 5, 11–12 (D.D.C. 2015) (quoting *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999)). Because Michel-

Wiggins alleges that the local housing agency, rather than HUD, denied her request to use the voucher at the hotel, she has not stated a claim against HUD based on that denial.[4]

The Government suggests that Michel-Wiggins' complaint could be understood to bring an APA challenge to the HUD regulation that lists the types of housing local agencies "*must* permit use of . . . if needed as a reasonable accommodation." 24 C.F.R. § 982.601(b)(3) (emphasis added); *see* ECF 11-1 at 18. That list does not include hotels. Even if so understood, Michel-Wiggins still fails to state a claim. The complaint is devoid of any allegation that the HUD regulation is arbitrary, capricious, or contrary to law. And Michel-Wiggins has not provided any reason to think that the regulation prohibits a local agency from offering her a reasonable accommodation in the form of a hotel lease if necessary to comply with federal law. To the contrary, other HUD regulations "effectuate . . . the Rehabilitation Act" and prohibit disability discrimination. 24 C.F.R. §§ 8.1, 8.4. That Michel-Wiggins has not identified a flaw in HUD's regulations only confirms that she is challenging a decision made by the local housing agency, not HUD. Because HUD is not responsible for that decision, Michel-Wiggins' claims regarding the denial of her request to use the voucher at the hotel must be dismissed.

**C. Michel-Wiggins fails to state a reasonable accommodation claim regarding her in-person interview request.**

Michel-Wiggins also brings a Rehabilitation Act claim against HUD for denying her request for an in-person interview at her hotel room. That claim likewise fails as a matter of law. The facts as alleged in Michel-Wiggins' complaint confirm that HUD "fully satisfie[d] its statutory obligation by offering an accommodation [that was] reasonable, even if it [was] not the one"

---

[4] There are other fatal flaws with this claim, as well. Neither Title VI nor Titles II or III of the ADA apply to federal agencies. *See Coulibaly v. Pompeo*, 318 F. Supp. 3d 176, 186 (D.D.C. 2018) (Title VI); *Edwards*, 2020 WL 2800605, at *7 ("[C]ourts have long held that none of the titles [in the ADA] is directed toward the federal government."). What's more, Title VI prohibits discrimination "on the ground of race, color, or national origin." 42 U.S.C. § 2000d. Michel-Wiggins' claims, however, are premised on disability discrimination.

9

Michel-Wiggins "preferred." *Ali v. Regan*, 111 F.4th 1264, 1269 (D.C. Cir. 2024) (discussing a parallel provision of Rehabilitation Act applicable to federal employees).

HUD first offered Michel-Wiggins an opportunity to interview in-person at the HUD office. ECF 1-4 at 19. Then, upon learning of Michel-Wiggins' agoraphobia, HUD repeatedly offered accommodations so that she "would not have to venture out of [her] hotel room." *Id.* at 20. HUD offered to meet via video conferencing, an option that it explained was used in the "majority of [its] investigations." *Id.* at 20–21. Michel-Wiggins rejected that option—not for any reason related to her disability, but because she had a "prefer[ence]" for "in-person meetings versus video or chat meetings." *Id.* at 22. Even still, HUD offered other in-person options such as meeting in the hotel lobby or a public library. *Id.* at 21. But Michel-Wiggins refused to consider any option other than meeting in her personal hotel room or HUD "paying for a separate hotel room to conduct [her] interview." *Id.* at 25. It was only after Michel-Wiggins shut down all dialogue that HUD resorted to sending Michel-Wiggins the written questions. *Id.* at 24.

Michel-Wiggins cannot plausibly state a disability discrimination claim on these facts. HUD was not obligated to offer Michel-Wiggins the "accommodation [s]he requests or prefers," but only "some reasonable accommodation." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998); *see also Rosen-Kellogg v. Mayorkas*, No. 22-cv-3028, 2023 WL 7697043, at *6 (D.D.C. Nov. 15, 2023) (explaining that an agency is not required to provide a plaintiff "the accommodation of her choosing, but rather reasonable accommodations"). HUD did so here, engaging in an interactive process to identify and offer multiple reasonable accommodations. By contrast, the accommodation that Michel-Wiggins insisted on—requiring a federal employee to conduct a work meeting that is typically done virtually in a personal hotel room—was not "reasonable on its face." *Hill v. Assocs. for Renewal in Educ.*, 897 F.3d 232, 237 (D.C. Cir. 2018).

10

Nor was it "related to the limitation that rendered [Michel-Wiggins] disabled." *Id.* Michel-Wiggins refused the video conference option not because it would not allow her to participate fully in the investigation in light of her disability, but because she "prefer[red] in-person meetings . . . when discussing matters of a serious nature." ECF 1-4 at 22. The complaint therefore makes clear that HUD "offer[ed] an accommodation that [was] reasonable" and did not need to provide Michel-Wiggins' "preferred" accommodation, which was neither "reasonable" nor "related" to Michel-Wiggins' disability. *Ali*, 111 F.4th at 1269; *Hill*, 897 F.3d at 237.

* * *

Michel-Wiggins has failed to state any claims upon which relief can be granted. Accordingly, the Defendants' motion to dismiss, ECF 11, is **GRANTED**. A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: September 23, 2025